Nicole A. Westbrook *pro hac vice pending*
Albert B. Sahlstrom *pro hac vice pending*
1675 Broadway, 26th Floor
Denver, Colorado 80202
Telephone: (303) 573-1600
nwestbrook@joneskeller.com
asahlstrom@joneskeller.com

Jeremy M. Hoffman (5290)
jmhoffman@yahlaw.com
Scott L. Sackett II (11762)
scott@yahlaw.com
175 South Main Street, Suite 850
Salt Lake City, Utah  84111
Telephone:  (801) 359-1900
Attorneys for Plaintiff

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| JONATHAN HILLBERY,<br><br>Plaintiff,<br><br>v.<br><br>NU SKIN ENTERPRISES UNITED STATES, INC., and NU SKIN INTERNATIONAL, INC.,<br><br>Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No.<br><br>Judge:<br><br>**JURY DEMANDED** |

Jonathan Hillbery, through counsel, Jones & Keller, P.C., and Jeremy M. Hoffman and Scott Sackett, II, of and for Young Hoffman, LLC respectfully submits his Complaint against Nu Skin Enterprises United States and Nu Skin International, Inc. (collectively, "Nu Skin"), demands a jury, and states as follows:

## NATURE OF THE ACTION

1. This is a case involving the abuse of power by a large, multinational company, Nu Skin, against a small business owner, Mr. Hillbery, who has spent more than 17 years building a livelihood in network marketing under Nu Skin's system by leveraging his vast personal relationships and connections.

2. In spite of Mr. Hillbery's persistent work and exceptional success operating his business, nearly a year ago, Nu Skin decided without basis that it was in its best interest to shut Mr. Hillbery out of his work and facilitate and participate in the dissemination of offensive false statements disparaging Mr. Hillbery's character and falsely accusing him of sexual misconduct that, if true, would rise to the level of criminal conduct and sexual assault.

3. This attack on Mr. Hillbery's character and his business has permanently damaged and undermined his relationships and ability to make a living in the type of business to which his life has been devoted for nearly 20 years.

## THE PARTIES

4. Plaintiff Jonathan Hillbery is a citizen of Florida currently residing in Australia.

5. On information and belief, Defendant Nu Skin Enterprises United States, Inc. ("NSE") is a Delaware corporation, with its headquarters and principal place of business in Provo, Utah.

6. On information and belief, Defendant Nu Skin International, Inc. ("NSI") is a Delaware corporation, with its headquarters in Provo, Utah. NSI markets products outside the U.S. through direct selling distribution channels.

7. Nu Skin's business dealings, contracts, and policies do not differentiate between NSE and NSI, and at all times material to this case, NSE and NSI were acting jointly as "Nu Skin."

## JURISDICTION AND VENUE

8. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(a)(2). This controversy is between a Plaintiff who is a citizen or subject of a foreign state and two Defendants that are Delaware corporations with their headquarters and principal place of business in the state of Utah. The matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

9. Venue is proper within this Judicial District under 28 U.S.C. § 1391. Nu Skin is subject to in personam jurisdiction in Utah, its principal place of business is in Utah, and a substantial part of the events, misrepresentations, and/or omissions giving rise to the claims occurred within this District.

## GENERAL ALLEGATIONS

**A.    Nu Skin's marketing system**

10. Nu Skin is a large, multinational company that sells skin care, personal hygiene, and nutritional supplements through network marketing, a model of business that is often colloquially referred to as "multilevel marketing" and which relies on large networks of "distributors" or "brand affiliates" such as Mr. Hillbery who build their own businesses as independent contractors to Nu Skin.

11. As in other network marketing businesses, success in this model depends almost entirely on the quality of a distributor's personal network and relationships, as each of these

businesses builds its income and opportunities by selling Nu Skin's products while also recruiting "downlines" of additional distributors, who in turn sell Nu Skin's products while recruiting additional "downlines" of additional distributors, and so on.

12. Nu Skin calculates the compensation of each distributor not only based on his or her own sales, but also based on the sales of the lines of distributors recruited into the downlines under that distributor. Nu Skin recognizes tiers of achievement within its system with titles such as "Ruby Executive," "Emerald Executive," "Diamond Executive", "Blue Diamond Executive," and "Team Elite Executive," which entitle distributors to increasing percentage commissions of their sales, as well as various other benefits.

13. While this business model generates sales for Nu Skin of approximately 2.28 billion dollars each year, it places the onus for success entirely on the individual attempting to work as a distributor.

14. Nu Skin purports to exercise the right to unilaterally change its policies and requirements of distributors at any time, and while it encourages distributors to seek guidance from the "upline" distributors who are senior to them, Nu Skin does not purport to be bound by upline distributors' promises or representations.

15. Many of the purported opportunities for training or support that Nu Skin provides to distributors require significant expenditures of time and money, and building a successful business is extremely difficult.

16. In short, Nu Skin has created a system in which it wins regardless of whether a given distributor loses. Long-term success requires a distributor to build an extremely broad and

deep network of downline distributors, and past a point, Nu Skin is able to continue to benefit from the downline distributors that a top distributor has established, whether or not that distributor is kept in place on an ongoing basis.

**B.      Jonathan Hillbery's successful work with Nu Skin**

17.     Mr. Hillbery began working in his distributor business under Nu Skin in February 2005.

18.     Nu Skin's system actively encouraged Mr. Hillbery to devote himself entirely to building his business, and he did so, motivated by the belief that he was creating a network of worldwide consumers and distributors that he could continue to benefit from for life. By the beginning of his second year in that business, Mr. Hillbery was working more than twelve-hour days, seven days a week, and he continued to do so until at least June 2009, after which he continued to consistently work six to eight hours a day, five to six days a week.

19.     As a direct result of his hard work and dedication, Mr. Hillbery quickly advanced through Nu Skin's ranks, reaching Ruby Executive status in February 2006, Emerald Executive status in September 2006, Diamond Executive status in December 2006, and Blue Diamond Executive status in April 2007.

20.     After only 27 months of working in his distributorship business, in July 2007, Mr. Hillbery achieved Team Elite Executive status—the highest level of achievement in NuSkin's Pharmanex division—and he has retained the title since then. On information and belief, this short, fast rise to the top of Nu Skin's system set a new record of accomplishment for a distributor without any prior network marketing experience.

21. On information and belief, Mr. Hillbery has generated millions of dollars in sales of Nu Skin products through his sales and the sales of the downlines that he built.

22. Through this work, Mr. Hillbery came to know John Whittaker, another successful distributor who was in the same downline as Mr. Hillbery, and in March 2008, Hillbery and Whittaker joined their Nu Skin businesses together. Since then, that business has continued to grow. A key part of that growth has been both Mr. Whittaker and Mr. Hillbery's openness to assisting other distributors and providing support and training in the areas that had succeeded in growing their business.

23. From 2009 on, Nu Skin began to regularly use Mr. Hillbery for market feedback and promotional activities, including in international markets. Among other things, Mr. Hillbery worked to launch Nu Skin's ageLOC brand in Australia and New Zealand and personally help develop Nu Skin's markets in Spain, Portugal, Austria and Germany. For example, as of roughly 2012 or 2013, Hillbery and Whittaker's Nu Skin business alone accounted for 25% of Nu Skin's market in Spain.

24. As a business, Nu Skin cultivates a high-powered sales culture that is fueled by frequent in-person trainings and events across the country and around the globe. Increased access to these events and related benefits are some of the main incentives that Nu Skin leverages to encourage and entice its distributors, and Team Elite-level distributors are provided with a steady flow of those opportunities, often accompanied by official or unofficial social gatherings on the road that frequently involve alcohol and late hours. And the longer a given distributor continues in

the business, it is increasingly common for successful distributors to have Nu Skin networks that overlap heavily with their own friendships and personal networks.

25. For these and related reasons, it is not unusual for Nu Skin distributors to become romantically involved with each other, and even Nu Skin's staff and leadership have had pursued romantic entanglements within the company, some of which have led to subsequent marriages and divorces.

26. Four years into working in his distributorship business, Mr. Hillbery became romantically involved with another distributor named Michelle Molnar for roughly four months.

27. Following that relationship, Mr. Hillbery became involved with another distributor, Michele Mase, whom he subsequently married in 2011.

28. Over time, they drifted apart and in November 2014, Ms. Mase and Mr. Hillbery separated. Following their separation, Mr. Hillbery went to live in Portugal to focus on promoting, training, and supporting his and Mr. Whittaker's business in Europe. He spent the four following years working remotely from Mr. Whittaker, and his up-line distributors.

29. Mr. Hillbery divorced Ms. Mase in 2018. The marriage did not end amicably.

30. Eventually Mr. Hillbery succeeded in building markets for Nu Skin in Austria, Germany, and Switzerland, in spite of the fact that neither Nu Skin itself nor any distributors had previously made any significant inroads into German speaking markets. Later, he also became romantically involved with one other Nu Skin distributor in Austria. In roughly 15 years, these three relationships were the only actual or attempted romantic or sexual liaisons with anyone affiliated with Nu Skin.

31.     After years of work, Hillbery and Whittaker's monthly organizational volume is more than one million points, in addition to another one million points that—due to the organization of Nu Skin's system—bring income into Nu Skin but do not generate income for Mr. Whittaker or Mr. Hillbery. Hillbery and Whittaker's downline currently has roughly 730 executive distributors. Their business in German-speaking countries in Europe accounts for roughly 80% of the entire Nu Skin volume in that region.

32.     As a result of these accomplishments and Mr. Hillbery's proven ability to thrive in a sales system without prior experience, Nu Skin has long known that he had a high likelihood of future success with those abilities and the network of relationships he built, even without Nu Skin's involvement.

**C.      The attacks on Mr. Hillbery and his character**

33.     During and following their divorce, relations between Ms. Mase and Mr. Hillbery became increasingly bitter, and on information and belief, Ms. Mase reached out to Nu Skin to make a series of salacious sexual allegations about Mr. Hillbery that, subsequently, she ultimately retracted.

34.     In addition to being false, on information and belief the allegations Ms. Mase initially provided to Nu Skin involved purported details in which Ms. Mase could not plausibly have been involved and of which Ms. Mase could not possibly have had direct knowledge.

35.     On information and belief, another distributor, Pam Vickers, took an interest in Nu Skin's investigation of these allegations, and as a result, Nu Skin allowed her to be involved in its internal proceedings on this point.

36. As of late 2019 and early 2020, the "Me Too Movement" had been a significant public relations consideration for more than two years, and Nu Skin had begun to take action against some of its distributors, publicly evidencing a "shoot first and ask questions later" mentality that elevated Nu Skin's own public relations priorities over either good faith investigation of allegations, respect for the principle that one is innocent until proven guilty, or respect for distributors' privacy.

37. As a result, Nu Skin has apparently taken the position that in some way, the dynamics between distributors render even consensual sexual encounters *per se* harassing or "predatory." Likewise, Nu Skin has apparently taken the position that the mere allegation of such an encounter requires indefinite investigation and suspension of all connected business activities (or even personal communications) by the accused party. This climate created by Nu Skin inherently creates the potential both for intentional abuse of that system and also passive acquiescence by potential witnesses who understand Nu Skin's business practices and who know Nu Skin's desired outcome from its investigations.

38. On information and belief, Nu Skin hired the law firm of Sidley Austin to conduct meetings on its behalf regarding the allegations against Mr. Hillbery, and instead of sequestering potential witnesses or interviewing them separately, Nu Skin also included the participation of Ms. Vickers in the meeting to discuss Ms. Mase's allegations against Mr. Hillbery. On information and belief, through that meeting, Nu Skin both published Ms. Mase's statements about Mr. Hillbery to Ms. Vickers and also published its own representatives' statements about Mr. Hillbery to Ms. Vickers.

39. Nu Skin consistently emphasizes the importance of relationships in the context of running a network marketing business, and it routinely takes positions focused on protecting its own reputation as a business.

40. Nevertheless, on information and belief, Nu Skin fails to take basic or reasonable precautions to protect the vital reputations of the small business owners operating within its system, including Mr. Hillbery, as Nu Skin evidently prioritizes its desire to make a show of its efforts regarding misconduct over any interest in verifying the truth of the allegations it acts on.

41. In fact, on information and belief, Nu Skin makes it clear to potential witnesses that its goal is to sanction and remove anyone it investigates, and those acting on its behalf routinely transmit negative allegations about those whom it investigates to potential witnesses—particularly to other Nu Skin distributors—both as an effort to make a show of its efforts and as part of attempting to build a case against the subjects of the investigations, specifically including Mr. Hillbery.

42. As demonstrated by the surrounding circumstances, Nu Skin either pursues this course of action for the direct purpose of interfering with the business relationships of those whom it investigates, or it does so knowing that that interference is virtually certain to occur as a result of its actions.

43. Thus, while those in Mr. Hillbery's situation are given only incomplete information about the accusations against them, on information and belief, Nu Skin freely publishes its derogatory allegations against them, both through officially discussing those allegations during its

"investigations" and, on information and belief, through other, informal conversations by Nu Skin's representatives within its network.

44. On information and belief, Nu Skin in fact intends those who receive those published allegations to pass them on to their networks, both as a means of intimidating and pushing those it investigates out of its network, and as a means of making a show of its efforts as a public relations measure.

45. At Nu Skin's direction, in February of 2020, Mr. Hillbery provided access to the files on his telephone and computer and attended an extended virtual meeting with Nu Skin's representatives.

46. During this meeting, Nu Skin's representatives vaguely accused Mr. Hillbery of sexual misconduct with as many as nine different women currently or formerly within Nu Skin's network. None of the allegations were true, and while the alleged acts were presented by Nu Skin's representatives as serious misconduct, much or all of the conduct would have been consensual if true, and there was little basis for Nu Skin's account of what had happened.

47. Despite this interview, Mr. Hillbery had no reason so believe that Nu Skin would take any adverse action toward his business or that he would be suspended in any way.

48. Additionally, Mr. Hillbery had no idea that Nu Skin was allowing false allegations about him and his conduct to spread through the distributors. On information and belief, Nu Skin has intentionally published false statements to the effect that Mr. Hillbery is a sexual predator who has abused his position within Nu Skin in order to prey on women, and Nu Skin has published those statements both directly and through Ms. Vickers.

49. Nu Skin's accusations are both directly false and also imply additional facts that are untrue.

50. Nevertheless, on information and belief, Nu Skin's accusations of sexual misconduct against Mr. Hillbery have steadily spread through its network of distributors and their contacts since that time, labeling Mr. Hillbery as a sexual predator in the network of contacts that has been Mr. Hillbery's life and the source of his livelihood for almost two decades.

51. This spread of false, derogatory accusations has called into question Mr. Hillbery's honesty, integrity, virtue, and reputation, and it has exposed him to public hatred, contempt, and ridicule within that network of distributors and their contacts.

52. On August 5, 2020, Nu Skin sent a letter to Mr. Hillbery suspending him from operating any Nu Skin business based on its ongoing "investigation" of him. This is the first time Mr. Hillbery possibly became aware that Nu Skin was taking action against him and potentially spreading misinformation about him.

53. That letter also purported to bar Mr. Hillbery from discussing this matter with anyone affiliated with Nu Skin's networks. The terms of that suspension have left Mr. Hillbery without access to the business contacts he has built and without even the means to defend himself to his friends and associates, even as Nu Skin is free to disseminate defamatory allegations about Mr. Hillbery and even as it places no restrictions on other distributors' ability to disseminate those allegations to Mr. Hillbery's business contacts and other distributors.

54. This improper purported restriction on Mr. Hillbery not only deprived him of any reasonable means of defending himself but it also deprived him of any ability to communicate

with his personal networks—including many or all of his close friends and associates—and it eliminated his ability to maintain his crucial networks for any business activities whatsoever, in violation of any reasonable established business standards.

55. On information and belief, Nu Skin has long known that the allegations against Mr. Hillbery are incorrect, insufficiently substantiated and/or otherwise do not form a valid basis to sanction Mr. Hillbery, and yet it has continued to leave its purported investigation pending without a proper basis.

56. Instead of giving Mr. Hillbery a fair opportunity to appeal its restrictions, Nu Skin deceptively presented the restrictions to Mr. Hillbery under the guise that it would be a temporary situation that would be resolved pending the outcome of its investigation.

57. Unbeknownst to Mr. Hillbery, in or about May 2021, Mr. Hillbery's ex-wife, Michele Mase, contacted Nu Skin to notify it that she was retracting her accusations against Mr. Hillbery, but that change has made no apparent impact on Nu Skin or on Mr. Hillbery's status.

58. On information and belief, Nu Skin never intended to lift the "suspension" against Mr. Hillbery and remains in effect today.

59. Nu Skin has still taken no action after months of allowing a cloud of purported misconduct to hang over Mr. Hillbery and publicly purporting to investigate the situation. On information and belief, the reason Nu Skin has stalled further action on these issues is that it knows that it cannot truly substantiate its position and it merely intends to drag out the suspension and purported investigation as long as possible in order to maximize its impact on Mr. Hillbery.

60.     In spite of the fact that Mr. Hillbery is still precluded from working his Nu Skin account, after months of Nu Skin scorching the earth through its purported investigation it has effectively prevented Mr. Hillbery from leaving and making a living by applying the same talent, skills, and experience that made his Nu Skin distributorship so successful. After nearly 20 years of Mr. Hillbery binding his personal and professional networks to his Nu Skin business, Nu Skin's actions have poisoned the reputation and relationships he needs to continue to work in sales outside of Nu Skin.

61.     Prior to Nu Skin's harmful acts, Mr. Hillbery's reputation in his business and with his personal connections was impeccable. Since Nu Skin's bad behavior, Mr. Hillbery's reputation has been harmed and his standing in the community impaired. Mr. Hillbery has suffered humiliation, shame, mental anguish and suffering, emotional distress and related physical injuries due to Nu Skin's acts.

62.     As a result, Mr. Hillbery is frozen in place with Nu Skin, but Nu Skin's actions have successfully taken from him the means that he needs to move forward and make a successful living outside of Nu Skin's system. As a result, Mr. Hillbery is entitled to redress from this Court and Nu Skin is accountable for its ongoing, intentional, wrongful acts against Mr. Hillbery's character and his livelihood.

63.     As a consequence of Nu Skin's actions, Mr. Hillbery has suffered both general and special damages, including past and future lost profits, and damage to his personal and professional reputation, all in amounts to be established at trial.

**FIRST CAUSE OF ACTION**
**(Defamation)**

64. Mr. Hillbery incorporates by reference the above numbered paragraphs as if fully set forth herein.

65. Nu Skin published statements about Mr. Hillbery.

66. The statements were false.

67. The statements were defamatory.

68. Nu Skin acted with the required degree of fault in publishing the statements.

69. The statements caused damages to Mr. Hillbery in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Intentional Interference with Economic Relations)**

70. Mr. Hillbery incorporates by reference the above numbered paragraphs as if fully set forth herein.

71. Nu Skin intentionally interfered with potential economic relationships that Mr. Hillbery had and either acted for the purpose of interfering with those relationships or acted knowing that the interference was substantially certain to occur as a result of its actions.

72. Nu Skin did so by improper means.

73. Nu Skin's interference harmed Mr. Hillbery and caused damages to Mr. Hillbery in an amount to be determined at trial.

## PRAYER FOR RELIEF

Having stated his causes of action, Mr. Hillbery prays for judgment against Nu Skin as follows:

A.  All actual damages suffered as a result of Nu Skin's conduct, including all consequential damages, lost profits, and lost opportunities;

B.  An award of exemplary and/or punitive damages, statutory damages, economic damages, noneconomic damages, treble damages, and lost profits, as allowed;

C.  Costs and expenses of this action;

D.  Attorney fees as allowed by law or contract;

E.  Expert witness fees;

F.  Pre-judgment and post-judgment interest on any award of damages, to the extent permitted by law; and

G.  Such other and further relief as the Court deems just and appropriate.

Dated this 28th day of July, 2021.

> Respectfully submitted,
> **JONES & KELLER, P.C.**
>
> */s/ Albert B. Sahlstrom*
> Nicole A. Westbrook *pro hac vice pending*
> Albert B. Sahlstrom *pro hac vice pending*
> Attorneys for Plaintiff
>
> **YOUNG HOFFMAN, LLC**
> */s/ Jeremy M. Hoffman*
> Jeremy M. Hoffman
> Attorneys for Plaintiff