IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JONATHAN HILLBERY,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NU SKIN ENTERPRISES UNITED STATES, INC. and NU SKIN INTERNATIONAL, INC.,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER APPOINTING ARBITRATOR**<br><br>Case No. 2:21-cv-00464-TC-JCB<br><br>District Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

On January 25, 2022, the court granted a motion to compel arbitration and stay action filed by Defendants Nu Skin Enterprises United States, Inc. and Nu Skin International, Inc (collectively, "Nu Skin"). It ordered that

> [a]n arbitrator must decide whether [Plaintiff Jonathan] Hillbery is bound by a Nu Skin arbitration policy, and if so, whether his claims fall within that policy's scope. If the arbitrator decides that Mr. Hillbery's tort claims are subject to an arbitration policy, the parties must arbitrate those claims. But if the arbitrator decides that Mr. Hillbery's claims are not subject to an arbitration policy, the parties shall return here to continue the litigation.

(Mem. Decision & Order at 11, ECF No. 46.) The parties came to an impasse and now ask the court to appoint an arbitrator. (ECF No. 49.)

In Utah, when the parties cannot agree on an arbitrator, the court must appoint the arbitrator. Utah Code Ann. § 78B-11-112(1). The arbitrator must disclose any "financial or personal interest in the outcome of the arbitration proceeding" and any "existing or past relationship with any of the parties . . . , their counsel or representatives, a witness, or another arbitrator." Utah Code Ann. § 78B-11-113(1). If the parties' arbitration agreement requires arbitral neutrality, an arbitrator with serious ties to a party or a substantial interest in the outcome

must be disqualified.  See Utah Code Ann. § 78B-11-112(2).  Ideally, the court should avoid any conflicts of interest by not appointing someone with such serious connections.

Nu Skin and Mr. Hillbery each suggested nine arbitrators.  Five were unavailable to conduct an arbitration.  Eight were deemed "disqualified" because of potential conflicts of interest.  Mr. Hillbery calls the remaining five arbitrators—all from his list—"neutral."  (Resp. at 4, ECF No. 52.)  Nu Skin objects to Mr. Hillbery's "neutral" arbitrators because they are all affiliated with JAMS[1] and all live outside of Utah.  JAMS has special arbitration rules that Nu Skin says conflict with their agreement with Mr. Hillbery.  For example, the 2010 Nu Skin Policies and Procedures mandate that the arbitration take place in Salt Lake City, while the JAMS rules permit remote arbitration.  (Compare First Muir Decl. Ex. F at 24, ECF No. 23-6, with Reply Ex. (Francis Decl.) Ex. A at 13, ECF No. 54-2.)  All five "neutral" arbitrators practice outside of Utah, so were the court to appoint one of Mr. Hillbery's JAMS arbitrators, the arbitration may inevitably be remote.  (See Resp. at 4, ECF No. 52.)

Many arbitration agreements incorporate JAMS rules, but the 2010 Policies and Procedures do not.  Although it will be the arbitrator's job to decide whether the 2010 Policies and Procedures even apply, the court hesitates to complicate this case by throwing JAMS rules into the mix.  It seems most consistent with the parties' expectations to pick a Utah arbitrator unaffiliated with JAMS.  Nu Skin argues that Paul H. Matthews and David W. Slaughter, two Utah-based, non-JAMS arbitrators whom Mr. Hillbery disqualified, are neutral and could be chosen.  Mr. Matthews and Mr. Slaughter both have connections to Craig R. Mariger, a former

---

[1] JAMS, formerly an acronym for "Judicial Arbitration and Mediation Services," is the "largest private provider of alternative dispute resolution (ADR) services worldwide."  JAMS, The JAMS Story, https://www.jamsadr.com/history (last visited June 2, 2022).

shareholder at Jones, Waldo, Holbrook & McDonough, PC who previously[2] represented Nu Skin in this case and who is now senior counsel to Nu Skin International. (Reply Ex. (Mariger Decl.), ECF No. 54-5.)

Mr. Matthews and Mr. Mariger never served as co-counsel for the same client (Mariger Decl. ¶ 6), though Mr. Hillbery claims that Mr. Matthews had a "[p]revious case w[ith] [Mr.] Mariger that Mr. Matthews failed to disclose." (Resp. at 3, ECF No. 52.) Mr. Matthews has been retired from actively practicing law since 2006, so the case to which Mr. Hillbery alludes would have been over fifteen years ago. (Mariger Decl. ¶¶ 7–8; Mariger Decl. Ex. A, ECF No. 54-6.) In any event, the court has located the only federal case where they represented co-parties: Rollins Leasing Corp. v. Badham & Associates Construction, Inc. et al., Case No. 2:98-cv-233-PGC. Rollins Leasing appears to have been a complex construction-defect case involving a total of 58 attorneys. Mr. Mariger represented one of three defendants from February 2000 to May 2002. Mr. Matthews represented one of sixteen third-party defendants from May to October 2003. Given that their representations never overlapped in time, this is hardly a conflict requiring disclosure to Mr. Hillbery.[3] Mr. Matthews has also performed "numerous mediations" for Jones Waldo, including mediations for Mr. Mariger. (Resp. Ex. (Westbrook Decl.) ¶ 5.d., ECF No. 52-1.) This should come as no surprise, as Mr. Matthews has "mediated and arbitrated in excess of 5,800 cases" in a relatively small Utah legal market. (Mariger Decl. Ex. A.)

Other than the Rollins Leasing representation that he did not even mention, Mr. Hillbery's issue with Mr. Slaughter is that "numerous" Jones Waldo attorneys are set to join

---

[2] As of the date of this order, Mr. Mariger has not yet filed a notice of withdrawal.

[3] Although Mr. Hillbery does not mention this, Mr. Slaughter was also involved in the Rollins Leasing case. He represented two third-party defendants from February 2000 (and June 2001) to July 2002. His representation overlaps with Mr. Mariger's time on the case, but because Mr. Mariger represented a defendant and Mr. Slaughter represented a third-party defendant, they were neither on the same side nor were they adverse. This coincidental co-representation from twenty years ago is hardly a basis to disqualify Mr. Slaughter.

3

Snow Christensen & Martineau, PC (SC&M), the law firm at which he practices. (Westbrook Decl. ¶ 9.a.) Nu Skin claims that only <u>two</u> Jones Waldo attorneys are going to SC&M, and neither ever represented Nu Skin. (Reply at 5–6, ECF No. 54.) Mr. Slaughter also has had previous mediations with Mr. Mariger. Again, this can be expected in Utah, and having prior proceedings before an arbitrator does not create a conflict that would prevent the arbitrator from hearing future cases.

## CONCLUSION

Mr. Matthews and Mr. Slaughter are both qualified to serve as arbitrators in this case. The court can only pick one person. Accordingly,

**IT IS ORDERED** that Nu Skin's motion to appoint arbitrator (ECF No. 49) is GRANTED.

**IT IS FURTHER ORDERED** that David W. Slaughter shall serve as the arbitrator.

**IT IS FINALLY ORDERED** that the parties shall continue to file joint status reports every 90 days. The next status report will be due July 24, 2022.

DATED this 2d day of June, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge